1

2

3

4

5

6

7

8                            IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SARITA SANDOVAL,

11              Plaintiff,                          No. CIV S-09-1635 DAD

12       vs.

13   MICHAEL J. ASTRUE,                             ORDER
     Commissioner of Social Security,
14
                Defendant.
15   _____/

16              This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is granted, the decision of the

19   Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded with

20   instructions to reinstate plaintiff's benefits as of January 16, 2007.

21                              **PROCEDURAL BACKGROUND**

22              On August 3, 2005, plaintiff filed applications for Disability Insurance Benefits

23   (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security Income

24   (SSI) under Title XVI of the Act, alleging disability beginning on March 2, 2005 due to panic

25   attacks, anxiety, and depression.  (Transcript (Tr.) at 72-89.)  Plaintiff's applications were denied

26   initially on October 27, 2005, and upon reconsideration on January 23, 2006. (Tr. at 57-61, 53-

                                                  1

54, 47-52.)  A hearing was held before an Administrative Law Judge (ALJ) on April 20, 2007.

(Tr. at 326-48.)  Plaintiff was represented by counsel and testified at the hearing.  In a partially

favorable decision issued on June 13, 2007, the ALJ found plaintiff disabled from March 2,

2005, through January 15, 2007, but not thereafter, due to medical improvement that occurred on

January 16, 2007.  (Tr. at 21-34.)  The ALJ entered the following findings:

> 1.  The claimant met the insured status requirements of the Social Security Act as of March 2, 2005, the date the claimant became disabled.

> 2.  The claimant has not engaged in substantial gainful activity since March 2, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

> 3.  At all times relevant to this decision, the claimant has had the following severe impairments:  a major depressive disorder and a panic disorder with agoraphobia.  (20 CFR 404.1520(c) and 416.920(c)).

> 4.  From March 2, 2005 through January 15, 2007, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).  There is no evidence that the claimant's impairments either meet or equal the level of severity required for an impairment under Sections 12.04 (Affective Disorders) or 12.06 (Anxiety-Related Disorders)

> 5.  After careful consideration of the entire record, the undersigned finds that, from March 2, 2005 through January 15, 2007, the claimant's mental impairments prevented her performing the basic mental demands of sustained, competitive, remunerative work activity, as described in 20 CFR 404.1545(c), 416.945(c), and Social Security Ruling 85-15.

> 6.  From March 2, 2005 through January 15, 2007, the claimant was unable to perform her past relevant work (20 CFR 404.1565 and 416.965).

> 7.  The claimant was born on March 25, 1976 and was 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

> 8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from March 2, 2005 through January 15, 2007 (20 CFR 404.1568 and 416.968).

10.  From March 2, 2005 through January 15, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant number in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant was under a disability, as defined by the Social Security Act, from March 2, 2005 through January 15, 2007 (20 CFR 404.1520(g) and 416.920(g)).

12.  Medical improvements occurred as of January 16, 2007, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

13.  Beginning on January 16, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

14.  After careful consideration of the entire record, the undersigned finds that, beginning on January 16, 2007, the claimant has had the residual functional capacity to perform simple unskilled work without frequent public or fellow employee contact.

15.  The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(i) and 416.994(b)(1)(iv)(A)).

16.  Beginning on January 16, 2007, the claimant has been unable to perform her past relevant work (20 CFR 404.1565 and 416.965).

17.  Beginning on January 16, 2007, transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

18.  Beginning on January 16, 2007, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

/////

1    19.  The claimant's disability ended on January 16, 2007 (20 CFR
2    404.1594(f)(8) and 416.994(b)(5)(vii)).

3    (Tr. at 27-33.)

4    On April 13, 2009, the Appeals Council denied plaintiff's request for review of

5    the ALJ's decision.  (Tr. at 4-6.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g)

6    by filing the complaint in this action on June 12, 2009.

7                                    **LEGAL STANDARD**

8            The Commissioner's decision that a claimant is not disabled will be upheld if the

9    findings of fact are supported by substantial evidence in the record as a whole and the proper

10   legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

11   (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

12   The findings of the Commissioner as to any fact, if supported by substantial evidence, are

13   conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

14   relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

15   Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

16   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

17   (1971)).

18           A reviewing court must consider the record as a whole, weighing both the

19   evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

20   at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

21   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

22   substantial evidence supports the administrative findings, or if there is conflicting evidence

23   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

24   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

25   improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

26   1335, 1338 (9th Cir. 1988).

                                              4

1    In determining whether or not a claimant is disabled, the ALJ should apply the

2    five-step sequential evaluation process established under Title 20 of the Code of Federal

3    Regulations, Sections 404.1520 and 416.920.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).

4    The five-step process has been summarized as follows:

5    Step one:  Is the claimant engaging in substantial gainful activity?
     If so, the claimant is found not disabled.  If not, proceed to step
6    two.

7    Step two:  Does the claimant have a "severe" impairment?  If so,
     proceed to step three.  If not, then a finding of not disabled is
8    appropriate.

9    Step three:  Does the claimant's impairment or combination of
     impairments meet or equal an impairment listed in 20 C.F.R., Pt.
10   404, Subpt. P, App. 1?  If so, the claimant is automatically
     determined disabled.  If not, proceed to step four.
11

     Step four:  Is the claimant capable of performing his past work?  If
12   so, the claimant is not disabled.  If not, proceed to step five.

13   Step five:  Does the claimant have the residual functional capacity
     to perform any other work?  If so, the claimant is not disabled.  If
14   not, the claimant is disabled.

15   <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

16   The claimant bears the burden of proof in the first four steps of the sequential

17   evaluation process.  <u>Yuckert</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

18   sequential evaluation process proceeds to step five.  <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098

19   (9th Cir. 1999).

20                                    **APPLICATION**

21   Plaintiff argues that the ALJ committed three principal errors in finding that

22   plaintiff was not disabled after January 15, 2007:  (1) the ALJ rejected the opinions of plaintiff's

23   treating psychiatrist without a legitimate basis for so doing; (2) the ALJ failed to credit plaintiff's

24   own testimony and third-party statements regarding the nature and extent of plaintiff's functional

25   limitations; and (3) the ALJ erred in utilizing the grids as a framework for decisionmaking and

26   failed to secure the testimony of a vocational expert.  These arguments are addressed below.

1          First, however it is important to note the well established principle that once an

2   applicant for Social Security disability benefits has carried her burden of proving disability, "a

3   presumption of continuing disability arises in her favor."  Bellamy v. Sec'y of Health & Human

4   Servs., 755 F.2d 1380, 1381 (9th Cir. 1985) (citing Murray v. Heckler, 722 F.2d 499, 500 (9th

5   Cir. 1983)).  See Perry v. Heckler, 722 F.2d 461, 464 (9th Cir. 1983) (affirming that a claimant

6   "enjoys a presumption of continued disability created by a prior finding of disability").  "The

7   Commissioner then bears the burden of producing evidence sufficient to rebut this presumption

8   of continuing disability," and that evidence, which is reviewed under the "substantial evidence"

9   standard, "must be produced before the Secretary can even consider the medical-vocational

10  guidelines."  Bellamy, 755 F.2d at 1381 (citing Murray, 722 F.2d at 500, and Perry, 722 F.2d at

11  461).

12         In order to decide whether a claimant's disability has continued, the

13  Commissioner must determine if there has been medical improvement in the claimant's

14  impairments and, if so, whether this medical improvement is related to the claimant's ability to

15  work.  20 C.F.R. §§ 404.1594(a) & 416.994(a) & (b).  For the purpose of determining whether

16  medical improvement has occurred, the Commissioner is required to compare the current

17  medical severity of the impairments that were present at the time of the most recent favorable

18  medical decision that the claimant was disabled with the medical severity of those impairments at

19  the current time.  20 C.F.R. §§ 404.1594(b)(7) & 416.994(b)(1)(i).  "A determination that there

20  has been a decrease in medical severity must be based on changes (improvement) in the

21  symptoms, signs and/or laboratory findings associated with [the] impairment(s)."  20 C.F.R. §§

22  404.1594(b)(1) & 416.994(b)(1)(i).  Even where medical improvement related to the claimant's

23  ability to work has occurred, the Commissioner must show that the claimant is currently able to

24  engage in substantial gainful activity before finding that the claimant is no longer disabled.  20

25  C.F.R. §§ 404.1594(a) & 416.994(b).

26  /////

1    In the present case, the ALJ found that, at all times relevant to his decision,

2  plaintiff's severe impairments included major depressive disorder and panic disorder with

3  agoraphobia.  (Tr. at 27.)  The ALJ determined that plaintiff's mental impairments "prevented

4  her performing the basic mental demands of sustained, competitive, remunerative work activity"

5  from March 2, 2005 through January 15, 2007.  (Tr. at 27.)  The ALJ also determined that

6  plaintiff's statements concerning the limiting effects of her symptoms were generally credible

7  and that plaintiff's inability to meet the basic mental demands of unskilled work activity severely

8  limited her occupational base through January 15, 2007.  (Tr. at 27-28.)   The ALJ concluded,

9  however, that as of January 16, 2007, medical improvement had occurred and plaintiff's

10 disability ended on that date.  (Tr. at 22.)

11    The court turns first to plaintiff's argument that the ALJ improperly rejected the

12 medical opinions of the treating psychiatrist regarding plaintiff's ability to meet the basic mental

13 demands of work activity on and after January 16, 2007.

14 **I.  Opinions of Plaintiff's Treating Psychiatrist**

15    The weight to be given to medical opinions in Social Security disability cases

16 depends in part on whether the opinions are proffered by treating, examining, or nonexamining

17 health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

18 "As a general rule, more weight should be given to the opinion of a treating source than to the

19 opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because

20 a treating doctor is employed to cure and has a greater opportunity to know and observe the

21 patient as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v.

22 Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

23    A treating physician's uncontradicted opinion may be rejected only for clear and

24 convincing reasons, while a treating physician's opinion that is controverted by another doctor

25 may be rejected only for specific and legitimate reasons supported by substantial evidence in the

26 record.  Lester, 81 F.3d at 830-31.  The ALJ need not give weight to a conclusory opinion

1    supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir.

2    1999) (affirming rejection of a treating physician's "meager opinion" as conclusory,

3    unsubstantiated by relevant medical documentation, and providing no basis for finding the

4    claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  "The

5    opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a

6    nonexamining physician."  Lester, 81 F.3d at 830.  An examining physician's uncontradicted

7    opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and

8    when an examining physician's opinion is controverted by another doctor's opinion, the

9    examining physician's opinion may be rejected only for specific and legitimate reasons supported

10   by substantial evidence in the record.  Id. at 830-31.  "The opinion of a nonexamining physician

11   cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either

12   an examining physician or a treating physician."  Id. at 831 (emphasis in original).

13          Here, plaintiff was treated at the Sacramento County Mental Health APSS (Adult

14   Psychiatric Support Services) Clinic beginning on May 17, 2004, when Mona Gill, M.D.,

15   performed the initial evaluation of plaintiff and began treating her.  (Tr. at 266-69, 271-72.)

16   Russell Lim, M.D. began treating plaintiff at the Clinic on July 18, 2005.  (Tr. at 250-53, 273-

17   74.)  On March 26, 2007, Dr. Lim evaluated plaintiff's residual functional capacity on a form

18   titled "Medical Assessment of Ability to Do Work-Related Activities."  (Tr. at 323-25.)  Dr. Lim

19   opined that in a competitive work environment plaintiff's ability to deal with the public, interact

20   with supervisors, and deal with work stresses was "Poor or None," a rating defined on the form

21   as meaning the individual has "[n]o useful ability to function in this area."  (Tr. at 323.)  Dr. Lim

22   opined further that plaintiff's ability to relate to co-workers, use judgment, function

23   independently, maintain attention/concentration, maintain personal appearance, behave in an

24   emotionally stable manner, relate predictably in social situations, and demonstrate reliability was

25   "Fair," defined on the form as meaning that the individual's ability to function in these areas "is

26   seriously limited, but not precluded."  (Tr. at 323-24.)  It was Dr. Lim's opinion that plaintiff's

8

ability to understand, remember, and carry out detailed job instructions was also "Fair," i.e.,

seriously limited, but not precluded.  (Tr. at 324.)  In Dr. Lim's opinion, plaintiff's ability to

follow work rules and to understand, remember, and carry out simple job instructions was

"Good," meaning "limited but satisfactory."  (Tr. at 323-24.)  Dr. Lim did not find plaintiff able

to perform any work-related activity at the level of "Unlimited or Very Good," which is defined

as meaning "more than satisfactory."  In written comments describing plaintiff's limitations, Dr.

Lim described plaintiff as having "severe anxiety, unable to go outside of her house without

major difficulty," and "very much house bound due to panic attacks."  (Tr. at 323.)  In response

to a question about other work-related activities affected by plaintiff's impairment, Dr. Lim

stated his opinion that plaintiff was "unable to get to work due to anxiety."  (Tr. at 325.)

The ALJ addressed Dr. Lim's evaluation as follows:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible beginning on January 16, 2007.
>
> In this regard, I give little evidentiary weight to the extreme findings assessed by Russell Lim, M.D., the mental health psychiatrist, in his medical source statement completed on March 26, 2007.  (Exhibit 9F [tr. at 322-25]).  The ultimate decision of disabled *vel non* is reserved to the Commissioner, SSR 96-5p and I am not bound to accept a treating physician's conclusion as to disability or functional capacity, particularly when, as here, the opinion is not supported by detailed clinical diagnostic evidence. 20 CFR §§ 404.1527 and 416.927; SSR 96-2p.  Doctor Lim did not cite objective findings that relate to functional limitations and restrictions assessed; and his findings appear to be based solely upon the claimant's recitation of her subjective complaints.  It also appears that he did not examine the claimant at the time of his statements, which suggests that his findings were an accommodation in part by the physician in an attempt to assist the claimant in her disability claim, rather than for treatment.
>
> His minimal findings noted in the mental health records at the time of his evaluations are not consistent with the extreme limitations he assessed, nor are they consistent with the findings in the other evidence of record, as described above.  As noted previously, Doctor Lim's progress notes indicate that the claimant's condition

1   improved with treatment and psychotropic medication.  His
    progress notes describe the claimant as being compliant with
2   medications.  She reported improved mood, decreased anxiety and
    better sleep.  Mental status examination was normal, the claimant's
3   insight and judgment were good, and she was cognitively intact,
    and she was seen in medication follow-up.  (Exhibit 8F [tr. at 297-
4   321].)  The objective findings cited in the mental health records
    indicate that the claimant's improved [sic] with appropriate
5   treatment.

6   Moreover, the record fails to establish significant [sic] due to
    depression or anxiety problems in the claimant's mental
7   functioning, daily activities or social interaction.  Although Doctor
    Lim described the claimant as being housebound, this is clearly
8   inconsistent with her hearing testimony, which indicates that she
    engages in a wide range of daily activities, including shopping for
9   groceries with her husband once a month and seeing movies about
    two times a year; the last movie she attended was three months
10  ago.  She attends church services twice a month.  She visits with
    her sisters and had restaurant meals with her sisters three times in
11  the last year.  She and her husband traveled to San Francisco, and
    she and her husband go to restaurants once a month.  She spends
12  her time raising her son; they go to the park once every two weeks
    and she goes to fast food drive-through restaurants.  She drives her
13  son to preschool and volunteers in her son's school classroom once
    a month, and stays with her son at preschool when she can.  These
14  activities do not support the degree of mental limitation alleged by
    the claimant.

15

16  (Tr. at 31-32.)  Citing mental health records and plaintiff's "wide range of daily activities," the

17  ALJ concluded that plaintiff's functional capacity for basic work activities had improved and

18  that, beginning on January 16, 2007, she had the residual functional capacity to perform simple

19  unskilled work without frequent public or fellow employee contact.  (Tr. at 30-32.)

20          The administrative record demonstrates that when Dr. Lim rendered his opinion of

21  plaintiff's ability to do work-related activities on March 26, 2007, he had been treating her for

22  more than a year and a half and was familiar with Dr. Gill's treatment records for the preceding

23  year, as well as the records of plaintiff's participation in panic group sessions during that year.

24  (See tr. at 250-74.)  Dr. Lim had seen plaintiff for visits every four to six weeks from July 2005

25  to February 16, 2007, which was the visit that may have been the closest in time to the date of

26  Dr. Lim's March 26, 2007 evaluation.  (Tr. at 319, 315, 313, 311, 305, 303, 302, 300, 298.)  Dr.

Lim's progress notes in May 2006 reflected that plaintiff was sleeping better and her panic attacks had decreased from ten per day to one or two per week.  (Tr. at 311.)  Panic attacks were occurring "only when she goes out," and "[s]he tend[ed] to stay home a lot."  (Id.)  Although the treatment records reflect decreased anxiety and improved ability to sleep as early as May 2006, the same records show frequent changes in plaintiff's medications in order to maximize effectiveness and minimize side effects that plaintiff could not tolerate.  In January 2007, for example, the month in which the ALJ found significant medical improvement, Dr. Lim described plaintiff as withdrawn, reiterated the diagnosis of major depression, continued her prescriptions for Effexor and Klonopin, and increased the dosage of her prescription for Celexa.  (Tr. at 300.)

The court finds that the treatment records do not support a finding of significant improvement in plaintiff's impairment between May 2006, when treatment had decreased her panic attacks from ten per day to one or two per week when she went out, and January of 2007.  Instead, the evidence supports a finding that plaintiff avoided anxiety attacks in large part by staying at home as much as possible and going out only under circumstances that reduced the likelihood of an anxiety attack.  Dr. Lim's description of plaintiff as "very much house bound due to panic attacks" is thus well supported by the treatment records.

Although the ALJ considered Dr. Lim's March 2007 evaluation "extreme," that characterization is inconsistent with the record.  Dr. Lim's progress notes show that plaintiff's decreased anxiety and improved ability to sleep resulted from medication, group therapy, and avoidance of anxiety triggers, but the progress notes but did not demonstrate improvement in plaintiff's ability to perform work-related activities.  As plaintiff's treating psychiatrist, Dr. Lim's frequent contacts with his patient over a period of many months had given him the opportunity to know and observe plaintiff as an individual.  His uncontradicted and well supported opinion is entitled to great weight and may be rejected only for clear and convincing reasons.

After carefully considering the ALJ's stated reasons for rejecting Dr. Lim's opinion, the court finds that they are not convincing.  First, the ALJ's assertion that Dr. Lim "did

not cite objective findings that relate to functional limitations and restrictions assessed" is unconvincing because Dr. Lim's opinion refers to plaintiff's diagnoses of severe anxiety and panic attacks, emphasizes plaintiff's inability to go outside of her house without major difficulty, resulting in her being virtually house-bound, and notes that her difficulty in going outside of her house would interfere with her ability to get to work.  The treatment records support Dr. Lim's diagnoses and his assessment of the serious limitations on plaintiff's ability to perform work-related activities.

Even less convincing is the ALJ's assertion that Dr. Lim's findings "appear to be based solely upon the claimant's recitation of her subjective complaints."  An ALJ may consider a claimant's lack of credibility and the extent to which a physician's opinion is influenced by the claimant's own information.  Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).  However, while the ALJ "may introduce evidence of actual improprieties," the ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits."  Lester, 81 F.3d at 832.  See also Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996); Reddick v. Chater, 157 F.3d 715, 726-27 (9th Cir. 1998).

Here, the ALJ did not introduce any evidence of impropriety on the part of Dr. Lim.  Instead, he speculated that Dr. Lim may not have examined plaintiff on the same day he assessed her ability to perform work-related activities and then drew an unfavorable inference from that speculation.  The administrative record includes medical records from the Sacramento County Mental Health APSS Clinic for the period from March 26, 2004 to October 19, 2005, produced by the Clinic in response to a request from the state agency in October 2005 (tr. at 245-74), and for the period from November 1, 2005 to February 16, 2007, which appear to have been obtained and offered by plaintiff's counsel in anticipation of the administrative hearing set for April 20, 2007 (tr. at 297-321).  Since the administrative record does not include Clinic medical records beyond February 16, 2007, it is impossible to determine whether Dr. Lim examined plaintiff on March 26, 2007, the date of his assessment of plaintiff (tr. at 322-25).  The treatment

1    notes for February 16, 2007, indicate, however, that plaintiff was to return to the clinic in

2    approximately four weeks, which would have been March 16, 2007.  Thus, it is quite possible

3    that Dr. Lim examined plaintiff on March 26, 2007, after the second batch of treatment records

4    had been copied for the administrative record.  The ALJ merely speculated that no examination

5    took place on March 26, 2007, and, on that basis inferred that Dr. Lim had completed the form

6    without examining plaintiff, for the sole purpose of assisting plaintiff with her disability claim.

7    In any event, the ALJ's inference is unconvincing even if Dr. Lim did not examine plaintiff on

8    March 26, 2007.  Dr. Lim had been treating plaintiff at four- to six-week intervals for almost two

9    years and had seen her at least as recently as February 16, 2007.  The ALJ's speculation and

10   unfavorable inference regarding the treating physician's motivation do not provide a convincing

11   basis for giving little weight to Dr. Lim's opinions.

12          The ALJ also gave little weight to Dr. Lim's assessment on the ground that it was

13   not consistent with plaintiff's own testimony about her daily activities and social interactions.

14   The court addresses this contention below, in the context of plaintiff's second argument in

15   support of summary judgment in her favor.

16   **II.    Plaintiff's Testimony and the Third-Party Statements**

17          Once a claimant has presented objective medical evidence of an underlying

18   impairment that could reasonably be expected to produce some degree of the pain or other

19   symptoms alleged, the ALJ may not discredit the claimant's own testimony as to the severity of

20   her symptoms merely because the degree of severity is unsupported by objective medical

21   evidence.  Lingenfelter v. Astrue, 504 F.3d 1023, 1035-36 (9th Cir. 2007); Reddick, 157 F.3d at

22   722; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  "'[T]he ALJ can reject the

23   claimant's testimony about the severity of [his] symptoms only by offering specific, clear and

24   convincing reasons for doing so.'"  Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281).

25   See also Morgan, 169 F.3d at 599; Reddick, 157 F.3d at 722; Matthews v. Shalala, 10 F.3d 678,

26   679 (9th Cir. 1993) (citing Miller, 770 F.2d at 848).

In evaluating a claimant's subjective testimony regarding pain and the severity of symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence along with many other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285. The ALJ may also rely in part on his own observations of the claimant. Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). However, the ALJ cannot substitute such observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

With respect to daily activities, it is well established that claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e). Daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). In order to conclude that the claimant's activities warrant an adverse credibility determination, however, the ALJ must make specific findings relating to the claimant's daily activities and the transferability of those activities to the work setting. Id.

The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Persons who see the claimant on a

14

daily basis are competent to testify as to their observations.  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.  The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony.  Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289.  Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony.  Smolen, 80 F.3d at 1289.  It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities.  20 C.F.R. § 404.1513(e)(2); SSR 88-13.

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  The determination of credibility is said to be a function of the ALJ acting on behalf of the Commissioner.  Saelee, 94 F.3d at 522.  As a general rule, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness.  Fair, 885 F.2d at 604 n.5.  Absent affirmative evidence of malingering, however, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing.  Morgan, 169 F.3d at 599.

Here, the ALJ characterized plaintiff's testimony as indicating that she

engages in a wide range of daily activities, including shopping for groceries with her husband once a month and seeing movies about two times a year; the last movie she attended was three months ago.  She attends church services twice a month.  She visits with her sisters and had restaurant meals with her sisters three times in the last year.  She and her husband traveled to San Francisco, and she and her husband go to restaurants once a month.  She spends her time raising her son; they go to the park once every two weeks and she goes to fast food drive-through restaurants.  She drives her

1    son to preschool and volunteers in her son's school classroom once
     a month and stays with her son at preschool when she can.  These
2    activities do not support the degree of mental limitation alleged by
     plaintiff.

3

4    (Tr. at 31-32.)  The ALJ expanded on the significance of plaintiff's activities as follows:

5             Moreover, the claimant's activities are indicative of an ability to
              perform simple tasks on a regular basis.  At the hearing, the
6             claimant reported that she engages in a wide range of activities,
              including household activities such as laundry, changing bed
7             sheets, vacuuming, scrubbing the bathroom and cooking.  She
              shops for groceries with her husband once a month.  She goes to
8             movies about two times a year, and last went to a movie three
              months ago.  She attends church services twice a month.  She visits
9             with her sisters and had restaurant meals with her sisters three
              times in the last year.  She and her husband traveled to San
10            Francisco, and she and her husband go to restaurants once a month.
              She spends her time raising her son; they go to the park once every
11            two weeks and she goes to fast food drive-through restaurants.  She
              drives her son to preschool and volunteers in her son's classroom
12            once a month and stays with her son at preschool when she can.

13            These activities do not support the degree of mental limitation
              alleged by the claimant.  A recent third-party statement completed
14            by Ms. Mercedes Parra, the claimant's sister, indicates that the
              claimant's activities are now quite limited.  However, the record
15            does not provide evidence of an ongoing or worsening condition
              that would significantly reduce the claimant's functioning at this
16            time.  (Exhibit 13E [tr. at 146-47]).

17   (Tr. at 33.)

18            The court notes that there was no assertion by Dr. Lim, plaintiff's sister, or

19   plaintiff herself that she is completely housebound.  However, it is obvious from the ALJ's own

20   summary of plaintiff's activities that she spends most of her time in her home and seldom leaves

21   the house unaccompanied by her husband, one or both of her sisters, or her child.  When she does

22   go out, she goes only to places relatively unlikely to bring on an anxiety attack:  her church, her

23   son's pre-school, movie theaters with her sisters, restaurants with her sisters or her husband, and

24   fast-food drive-through restaurants with her son.  Although the ALJ was particularly struck by

25   plaintiff's having once "traveled to San Francisco" with her husband, the Clinic records

26   document that plaintiff reported to Dr. Gill that she had a panic attack "around a crowd in San

1   Francisco." (Tr. at 264.)  In short, these limited activities do not demonstrate that plaintiff

2   spends a substantial part of each day, at least five days per week, engaged in pursuits that involve

3   the performance of physical functions transferable to a work setting.

4              The court acknowledges that plaintiff's ability to change the sheets on her bed

5   twice a week, do some laundry, vacuum twice a week, mop the floors twice a week, scrub the

6   bathroom once a week, and cook three meals a week demonstrates that plaintiff does not have a

7   physical disability.  However, these daily activities, all performed in the privacy of plaintiff's

8   home, completed at her own pace without time pressure and with no interaction with a

9   supervisor, co-workers, or the public, do not support the ALJ's finding that these activities show

10  that plaintiff "had the ability to perform the basic mental abilities of unskilled work without

11  frequent public or fellow employee contact as of January 15, 2007." (Tr. at 33.)  Plaintiff's

12  ability to play a role in managing her home does not contradict Dr. Lim's assessment that

13  plaintiff is very much housebound and lacking in work-related abilities.  Nor do any of plaintiff's

14  activities contradict the statements of plaintiff's sister regarding the degree to which plaintiff's

15  activities are limited.  (See tr. at 146-47.)

16             The court finds that the ALJ greatly exaggerated the significance of plaintiff's

17  ability to perform household chores and simple activities such as walking through a grocery store

18  with her husband once a month while he shops, watching her son at a park once or twice a month

19  and at his pre-school when she can, volunteering time in her son's classroom once a month,

20  going to a restaurant with her sisters three times a year, and seeing a movie with her husband

21  twice a year.  Such activities do not demonstrate that plaintiff could engage in substantial gainful

22  work activity as of January 16, 2007.  The signs associated with plaintiff's mental impairments

23  on the date of the alleged medical improvement do not provide substantial evidence of an actual

24  decrease in medical severity at that time.  The same conditions that led the ALJ to find plaintiff

25  unable to perform sustained work from March 2, 2005, through January 15, 2007, were still

26  present on January 16, 2007.

1          The court finds that the ALJ did not provide clear and convincing reasons for

2   finding plaintiff's testimony not credible after January 15, 2007.  Nor did the ALJ's brief

3   references to the third-party statements of plaintiff's sister include any reason for discounting

4   those statements, much less a reason germane to that particular witness.  Plaintiff is therefore

5   entitled to summary judgment on her argument that the ALJ erred in failing to credit plaintiff's

6   testimony and the third-party statements of plaintiff's sister.

7          When plaintiff's testimony and the statements of plaintiff's sister are properly

8   credited, it is clear that Dr. Lim's assessment was not inconsistent with plaintiff's testimony, and

9   the alleged inconsistency fails to provide a clear and convincing reason for rejecting Dr. Lim's

10  uncontradicted opinion concerning plaintiff's limitations.  See Ryan v. Comm'r of Soc. Sec., 528

11  F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons

12  for rejecting an examining physician's opinion by questioning the credibility of the patient's

13  complaints where the doctor does not discredit those complaints and supports his ultimate

14  opinion with his own observations."); Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001)

15  ("In sum, the ALJ appears to have relied on her doubts about [the claimant's] overall credibility

16  to reject the entirety of [the examining psychologist's] report, including portions that [the

17  psychologist] deemed to be reliable."); Regennitter, 166 F.3d at 1300 (holding that substantial

18  evidence did not support the ALJ's finding that examining psychologists took claimant's

19  statements at face value where the examining psychologists' reports did not contain any

20  indication that claimant was malingering or being deceptive).  In the absence of any convincing

21  reason for rejecting Dr. Lim's opinions,[1] plaintiff is entitled to summary judgment in her favor

22  with respect to her claim that the ALJ improperly rejected the opinions of her treating

23  psychiatrist, Dr. Lim.

24  _____

25       [1] The ALJ asserted that his findings were "essentially consistent with the findings of the
    state agency medical consultants."  (Tr. at 33.)  The findings of the state agency physicians in
    2005 shed no light on plaintiff's condition in January 2007.  The opinions of the non-treating and
26  non-examining physicians cannot serve as a basis for rejecting Dr. Lim's opinions.

18

**CONCLUSION**

The court finds that the ALJ failed to carry the Commissioner's burden of producing evidence sufficient to rebut the presumption of plaintiff's continuing disability.  While the evidence shows that plaintiff's severe mental impairments improved, the evidence does not show improvement sufficient to enable plaintiff to engage in substantial gainful activity.

Plaintiff's first and second arguments are dispositive, and it is therefore unnecessary to consider plaintiff's third argument.  See Bellamy, 755 F.2d at 1381 (holding that evidence sufficient to rebut the presumption of continuing disability must be produced before the Commissioner can even consider the medical-vocational guidelines); Perry, 722 F.2d at 463-64 (same).  Since "[b]enefits wrongfully terminated should be reinstated without further agency proceedings," Iida v. Heckler, 705 F.2d 363, 365 (9th Cir. 1983), the Commissioner's decision will be reversed and the case will be remanded with an order directing the reinstatement of plaintiff's disability benefits as of January 16, 2007.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (Doc. No. 22) is granted;

2.  Defendant's cross-motion for summary judgment (Doc. No. 25) is denied;

3.  The Commissioner's decision to terminate plaintiff's disability benefits as of January 16, 2007, is reversed; and

4.  This matter is remanded with instructions to reinstate plaintiff's benefits as of January 16, 2007.

DATED: December 15, 2010.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/sandoval1635.order

19